appeal of James Lagana and Lagana Enterprises, Inc. is quashed.

James Lloyd EL, Daniel Marsh, George Jones, Petitioners,

v.

Supt. Neal MECHLING, Unit Mgr. Carol Dewitt, Unit Mgr. Michael Zaken, Counselor W. Carnuche, Counselor Joan Mann, Counselor Jeff Rodgers, Unit Mgr. Hollick, Pa. Dept. of Corrections, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 2004.

Decided May 3, 2004.

James L. El, petitioner, pro se.

Alan M. Robinson, Camp Hill, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, J., McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Presently before this Court are the preliminary objections in the nature of a demurrer filed by Superintendent Neal Mechling, Unit Manager Carol Dewitt, Unit Manager Michael Zaken, Counselor W. Carnuche, Counselor Joan Mann, Counselor Jeff Rodgers, Unit Manager Hollick and the Pennsylvania Department of Corrections,[1] in response to a *pro se* amended petition for review filed by James Lloyd El, Daniel Marsh and George Jones (Petitioners).

In their amended petition for review, Petitioners seek relief in the nature of an order directing DOC to retrieve and destroy all DNA samples, fingerprints and related documents attributable to them. Further, Petitioners seek relief in the nature of a temporary injunction directing DOC to cease any attempts to obtain a DNA sample from Petitioner Marsh by force. Alternatively, Petitioners request that we deny DOC's preliminary objections and allow the case to proceed with briefs. We hereby grant the demurrer of DOC.

Petitioner El was convicted of robbery in 1993 and is serving a thirty to sixty year sentence at the State Correctional Institution (SCI) at Pittsburgh. Petitioner Marsh was convicted of homicide in 1985 and is serving a life sentence at SCI–Pittsburgh. Petitioner Jones was convicted of robbery in 1978 and is serving a thirty to sixty year sentence at SCI–Pittsburgh. This case arises out of DOC's actions in 2003 in attempting to comply with what is commonly referred to as the DNA Act.[2]

As to Petitioner El, he was first approached and presented with a DNA Act advisory in January of 2003 by his counselor, Joan Mann. Petitioner El initially refused to sign this advisory. Ms. Mann informed Petitioner El that he had twenty-four hours to sign the same or face a misconduct charge and thirty days of disciplinary custody.[3] Following this twenty-four hour period, Petitioner El returned to Ms. Mann's office and agreed to sign the advisory if he were allowed to place a statement on the document. Ms. Mann agreed and Petitioner El signed the advisory noting that he did so under duress in order to avoid disciplinary custody and the taking of a sample by force. Petitioner El was later fingerprinted and a blood sample was extracted.

As to Petitioner Jones, he was approached by his counselor, Jeff Rodgers, with the same document while in disciplinary custody on an unrelated issue.[4] Petitioner Jones initially refused to sign and Mr. Rodgers informed him of the same

---

1. For purposes of brevity, these named individuals, as well as the Department of Corrections, will hereafter be collectively referred to as DOC.

2. 42 Pa.C.S. §§ 4701—4741. This DNA Act repealed and replaced the 1995 DNA Detection of Sexual and Violent Offenders Act, Act of May 29, 1995, P.L. 1009, 35 P.S. §§ 7651.101—7651.1102.

3. Upon completion of these thirty days, Ms. Mann advised Petitioner El that if he still refused to sign, his DNA sample would be taken by force.

4. The exact timing of Petitioner Jones' meeting with Mr. Rodgers is unclear in the record.

procedure discussed by Ms. Mann above. Following Mr. Rodgers' discussion of the procedure, Petitioner Jones agreed to sign the advisory to avoid further disciplinary action and the taking of a sample by force. Petitioner Jones was later fingerprinted and a blood sample was extracted.

As to Petitioner Marsh, he was first approached and presented with the advisory in April of 2003 by his counselor, William Carnuche. Petitioner Marsh also initially refused to sign the document. Instead, he requested a copy of the same to send to his family and for his attorney to review. Petitioner Marsh later accompanied Mr. Carnuche to Unit Manager Michael Zaken's office. Mr. Zaken asked Petitioner Marsh if he was refusing to sign, to which he responded in the negative indicating that he merely wished to consult with his attorney before signing the same. Mr. Zaken informed Petitioner Marsh that he had twenty-four hours to make a final decision before initiating the procedure described above.

The next day Petitioner Marsh was called back to Mr. Zaken's office, at which time he again refused and asked for a copy to send to his attorney. He was immediately placed in handcuffs and Mr. Zaken directed two officers to take him to the restricted housing unit under pre-hearing confinement. Mr. Zaken lodged a misconduct charge against Petitioner Marsh and a hearing was held before a hearing examiner on April 24, 2003. The hearing examiner found Petitioner Marsh guilty and directed that he be placed in disciplinary custody for a period of thirty days.

On May 21, 2003, Petitioners filed their original petition for review with this Court.[5] Petitioners later filed an amended petition for review. In this petition, Petitioners alleged that in enacting the DNA Act, the General Assembly did not intend it to be retroactive to those persons convicted of a violent offense, but only to those persons convicted of a sexually violent offense. Petitioners also alleged that the application of the DNA Act violated their Fourth Amendment right to be free from unreasonable searches and seizures. Finally, Petitioners alleged that the application of the DNA Act violated their Fifth Amendment right against self-incrimination.

■ DOC filed preliminary objections in the nature of a demurrer alleging that any claim by Petitioners that the DNA Act is not applicable to them is without merit as said Act applies to all persons convicted of a "felony sex offense or other specified offense," including murder and robbery.[6] 42 Pa.C.S. § 4716(a). DOC also alleged that the taking of an inmate's blood for the purpose of a DNA sample did not violate either the Fourth or the Fifth Amendment. Finally, to the extent that Petitioners sought expungement of any DNA samples already taken, DOC alleged that Petitioners failed to allege valid grounds for such expungement.[7]

---

5. Petitioners originally filed a petition for writ of mandamus. However, by order of this Court dated May 23, 2003, we designated the same as a petition for review addressed to our original jurisdiction.

6. In ruling on preliminary objections in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Stone and Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616

A.2d 1060 (1992). The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993).

7. DOC further raised preliminary objections concerning failure to conform to rule of court regarding consecutive, numbered paragraphs as well as service. However, these preliminary objections were overruled by order of this Court dated September 30, 2003.

■ With respect to their first argument, Petitioners contend that the General Assembly did not intend the DNA Act to be retroactive to those persons convicted of a violent offense, but only to those persons convicted of a sexually violent offense. In support of this contention, Petitioners cite to Section 4716(b)(2) of the DNA Act, which provides that "[t]his chapter shall apply to incarcerated persons convicted or adjudicated delinquent for a felony sex offense prior to the effective date of this chapter." 42 Pa.C.S. § 4716(b)(2). Petitioners note that each of their convictions occurred before June 19, 2002, the effective date of the DNA Act, and argue that this Section evidences the General Assembly's intent to apply the DNA Act retroactively only to persons convicted of a "felony sex offense."

However, Petitioners misconstrue the nature of this Section and ignore the plain language found at Section 4716(a) of the DNA Act. Regarding the former, Section 4716(b) of the DNA Act is specifically titled "Condition of release." Subsection (1) of this Section provides that a person who has been convicted for a felony sex offense or other specified offense and who is incarcerated on or after June 19, 2002, "shall not be released in any manner and unless and until a DNA sample has been withdrawn."

Subsection (2) addresses any incarcerated person, even if not currently incarcerated as the result of a conviction for a felony sex offense or other specified offense, but who has been convicted of a felony sex offense prior to June 19, 2002. In other words, an incarcerated person with a conviction for a felony sex offense prior to this date. This subsection merely requires a person with a history of a felony sex offense conviction prior to June 19, 2002, to provide a DNA sample before that person may be released in any manner. This subsection in no way limits the application of the DNA Act to Petitioners in this case.

To the contrary, Petitioners here fit squarely within Section 4716(a) of the Act, the "General rule," which provides that "a person who is convicted ... for a felony sex offense **or other specified offense** and is or remains incarcerated on or after the effective date of this chapter shall have a DNA sample drawn...." 42 Pa.C.S. § 4716(a)(emphasis added). Section 4703 of the DNA Act defines "Other specified offense" as an offense relating to such crimes as murder and robbery. 42 Pa.C.S. § 4703. As noted above, Petitioners El and Jones were convicted of robbery and Petitioner Marsh was convicted of homicide. Moreover, each of these Petitioners remained incarcerated on and after the effective date of the DNA Act. Hence, Petitioners were subject to the DNA Act and were required to submit DNA samples.

Petitioners next contend that the application of the DNA Act violated their Fourth Amendment right to be free from unreasonable searches and seizures. However, we have previously considered and rejected this very argument in *Smith v. Pennsylvania Department of Corrections*, 829 A.2d 788 (Pa.Cmwlth.2003), wherein we held that the DNA Act violated neither the Fourth Amendment nor the similar but broader provisions of Article 1, Section 8 of the Pennsylvania Constitution.[8] *See also Dial v. Vaughn*, 733 A.2d 1

---

8. In *Smith*, we applied a balancing test of an individual's expectation of privacy against the government's interest in public safety and held that the government's interest outweighs an individual's privacy rights where "[m]aintaining a DNA data base serves an important governmental purpose of providing information to those who investigate and solve crimes." *Smith*, 829 A.2d at 794; *see also*

(Pa.Cmwlth.1999) (holding that the 1995 DNA Detection of Sexual and Violent Offenders Act did not violate the Fourth Amendment).[9]

Petitioners contend that the above decisions ignore important decisions from our United States Supreme Court in *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) and *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001). However, neither *Edmond* nor *Ferguson* address the constitutionality of the DNA Act in this state or its functional equivalent in other states. Rather, *Edmond* involved a Fourth Amendment challenge to a city's checkpoint program with the primary purpose of interdicting illegal narcotics, whereas *Ferguson* involved a hospital's policy of testing the urine of pregnant women for the presence of narcotics and thereafter reporting positive findings to the police.[10]

Next, Petitioners contend that the application of the DNA Act violated their Fifth Amendment right against self-incrimination. While we have not had occasion to specifically address this issue in this Commonwealth, said issue was previously considered and rejected by the federal courts. *See Shaffer; Boling v. Romer,* 101 F.3d 1336 (10th Cir.1996). In both of these cases, the Court indicated that any Fifth Amendment challenge to a statute requir-

ing an inmate to submit to DNA testing must fail as DNA samples are not testimonial in nature.

■ Finally, with respect to any claim by Petitioners as to expungement of their previously collected DNA samples, said claim is without merit. Petitioners rely on their previous arguments, addressed and rejected above, in support of this claim. Furthermore, Section 4721(a) of the DNA Act only provides for expungement of an inmate's DNA sample if "the conviction ... on which the authority for including that person's DNA record or profile was based has been reversed and the case dismissed." 42 Pa.C.S. § 4721(a). It is without question that Petitioners do not meet this requirement.

Accordingly, we sustain DOC's preliminary objections in the nature of a demurrer and dismiss Petitioners' amended petition for review.

### ORDER

AND NOW, this 3rd day of May, 2004, the preliminary objections in the nature of a demurrer filed on behalf of Superintendent Neal Mechling, Unit Manager Carol Dewitt, Unit Manager Michael Zaken, Counselor W. Carnuche, Counselor Joan Mann, Counselor Jeff Rodgers, Unit Manager Hollick and the Pennsylvania Depart-

*Singleton v. Lavan,* 834 A.2d 672 (Pa.Cmwlth. 2003).

**9.** Our decision in *Smith* was premised upon the reasoning in *Dial* wherein we indicated that the 1995 Act merely "subjects a target population of convicted inmates with reduced privacy expectations to a relatively minimal intrusion in furtherance of the Commonwealth's need to maintain an identification system to deter recidivism." *Dial,* 733 A.2d at 7 (citations omitted).

**10.** Admittedly, a District Court in *United States v. Miles,* 228 F.Supp.2d 1130 (E.D.Cal.

2002), applied the reasoning of *Edmond* and *Ferguson* to invalidate a DNA act similar to the one in the present case on the grounds it constituted an unreasonable search and seizure under the Fourth Amendment. However, *Miles* is of little precedential value to this Court, especially in light of our recent decisions upholding the constitutionality of our DNA Act. Moreover, other federal courts have upheld similar DNA collection statutes. *See, e.g., Shaffer v. Saffle,* 148 F.3d 1180 (10th Cir.1998), *cert. denied,* 525 U.S. 1005, 119 S.Ct. 520, 142 L.Ed.2d 431 (1998).

ment of Corrections are hereby sustained and the amended petition for review filed by James Lloyd El, Daniel Marsh and George Jones is hereby dismissed.