

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2005

# Johnson v. Ogershok

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3737

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Johnson v. Ogershok" (2005). *2005 Decisions.* Paper 1016.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1016

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-3737
_____

DETROY JOHNSON,

Appellant
v.

J.J. OGERSHOK, Department of Corrections, Corrections Unit Manager of Huntingdon
State Correctional Institution; JANE DOE, Wexford Medical Contracted Employee of
Huntingdon State Correctional Institution in PA.; JOHN DOE, Wexford Medical
Contracted Employee of Huntingdon State Correctional Institution in PA.

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 02-cv-01525)
District Judge: Honorable Malcolm Muir

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 18, 2005
Before: NYGAARD, VAN ANTWERPEN AND STAPLETON, CIRCUIT JUDGES

(Filed June 14, 2005)
_____

OPINION
_____

PER CURIAM

Appellant inmate Detroy Johnson appeals from the District Court's order granting

summary judgment in favor of J.J. Ogershok in this action challenging the

constitutionality of Pennsylvania's DNA Detection of Sexual and Violent Offenders Act.

44 Pa. C.S.A. §§ 2301-2336 (DNA Act).[1]  Appealing pro se, Johnson argues that the DNA Act violates the Fourth and Fourteenth Amendments because the taking of a blood sample from prisoners convicted of violent offenses for the purpose of storing DNA in a database for use by law enforcement and other government officials is an unreasonable invasion of privacy.  He seeks declaratory relief and the expungement of a DNA sample that was forcibly taken sometime prior to April 9, 2003.  He also argues that Defendant Ogershok unlawfully retaliated against him for refusing to submit a DNA sample.  For the reasons that follow, we will affirm.

I.

Johnson is an inmate at SCI-Huntingdon, serving seven to twenty years on a conviction for third degree murder.  During a 2000 institutional support parole review, Johnson was informed that under Pennsylvania's DNA Act and Department of Corrections (DOC) Policy, he was not entitled to release unless he provided a blood sample and would not receive institutional support for his parole.  Johnson refused to provide a sample.  Under DOC rules, other types of outside clearance are also barred until a sample is given.  Accordingly, his outside supervised clearance was revoked.  Eventually, a sample was forcibly extracted.[2]

---

[1]  1st Sp. Sess. P.L. 1009, No. 14, codified at 42 Pa. C.S.A. §§ 7651.101-7651.1102, recodified by the Act of Nov. 30, 2004, P.L. 1428, No. 185.

[2]  We are unaware of whether outside clearance was reinstated after the forcible extraction.

Johnson filed an inmate grievance alleging retaliation by Ogershok for his refusal to give a DNA sample. His initial grievance and subsequent institutional appeals were denied because under the DOC Policy VI.L.2.b.(2) the DOC staff "will not initiate . . . outside clearance . . ." for inmates who refuse to provide a DNA sample. On August 8, 2002, Johnson filed a complaint under 42 U.S.C. § 1983 asserting an as applied challenge to the DNA Act. He filed an amended complaint several months later. The Defendants then moved for summary judgment.

After the motion was briefed, the Ninth Circuit issued its ruling in United States v. Kincade, 345 F.3d 1095 (9th Cir. 2003), holding unconstitutional the Federal DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. §§ 14135-14135e (the Federal DNA Act).[3] The District Court appointed counsel and instructed the parties to brief the Fourth Amendment issue in light of Kincade.

In granting the Defendant's motion for summary judgment, the District Court rejected Johnson's arguments that the Fourth Amendment universally prohibits suspicionless searches to further the normal needs of law enforcement. Specifically, it held that the purpose of the DNA Act was for identification purposes, and "does not have as its primary purpose the generation of evidence of criminal wrongdoing." Johnson v. Ogershok, No. 02-cv-1525, 9 n.14 (M.D. Pa. July 6, 2004) (report and recommendation).

---

[3] Kincade also repudiated Rise v. Oregon, 59 F.3d 1556 (9th Cir. 1995), which upheld a similar state law.

3

Further, the Court reasoned "[p]ersons who have committed and been convicted of crimes have forfeited any expectation of privacy in their identity, including the characteristics of their DNA and hence, have no Fourth Amendment right implicated by the government's taking and retaining identifying information."   Johnson v. Ogershok, No. 02-cv-1525, slip op. at 7 (M.D. Pa. Aug. 17, 2004) (citing Groceman v. U.S. Dep't of Justice, 354 F.3d 411, 413-14 (5th Cir. 2004).  The Court also rejected his retaliation claim.  To the extent Johnson raises an argument under the Fourteenth Amendment, the District Court did not address the issue.  Johnson appealed and raises the same arguments.[4]

II.

While this appeal was pending, we decided United States v. Sczubelek, which held the Federal DNA Act constitutional under the Fourth Amendment.  402 F.3d at 187. There we concluded that because the Federal DNA Act "goes well beyond" what would typically call for a special needs analysis, "it is appropriate to examine the reasonableness of the taking of the sample under the more rigorous Knights totality of the circumstances test rather than the Griffin special needs exception."  Id. at 184 (citing United States v.

---

[4]   We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's resolution of the constitutional issues.  See United States v. Sczubelek, 402 F.3d 175, 178 (3d Cir. 2005).  We liberally construe Johnson's pro se brief, and "will apply the applicable law, irrespective of whether" Johnson specifically mentions it by name in his brief.  See Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotations omitted). We also note that one day after the District Court issued its order, Kincade was reversed by the Ninth Circuit sitting en banc.  See United States v. Kincade, 379 F.3d 813 (9th Cir. 2004) cert. denied Kincade v. United States, 125 S. Ct. 1683, 73 U.S.L.W. 3555 (U.S. Mar. 21, 2005) (No. 04-7253).

4

Knights, 534 U.S. 112 (2001); Griffin v. Wisconsin, 483 U.S. 868 (1987)).  Applying the more rigorous reasonableness test, we concluded that the compelling governmental interest in "accurate criminal investigations and prosecutions" advanced by the Federal DNA Act outweighs the "minimal" intrusion of a blood test and the minimal privacy interest retained by criminal offenders in keeping their "physical identity from government records."  Id. at 184-85.

Like the Federal DNA Act, the DNA Act involves state action well beyond what is normally at issue in the special needs context.  Therefore, we apply the totality of circumstances test here.  See Knights, 534 U.S. at 118-19.  Looking first at the Commonwealth's interests, the purposes of the DNA Act as identified by statute and advanced by the Commonwealth do not differ significantly from those of the Federal DNA Act upheld in Sczubelek.   In both acts, the use of the DNA is largely limited to assisting law enforcement in the identification and detection of individuals in criminal investigations and prosecutions.  See Sczubelek, 402 F.3d at 185; 42 U.S.C. § 14132(b)(3)(A); 44 Pa. Cons Stat. Ann. § 2318(c).  We agree with the District Court that the Commonwealth's interests are compelling.

Next, we cannot identify significant differences in the privacy invasion.  Both acts require that individuals convicted of certain specified offenses and in some form of custody must submit to a minimally intrusive blood test for the purpose of extracting a DNA sample.  See 42 U.S.C. §§ 14135a(a)(1), (2); 44 Pa. Cons. Stat. Ann. § 2316.   Both

5

laws also expressly limit the use of the DNA. See 42 U.S.C. § 14132(b) (limiting use to law enforcement identification, exculpatory, and judicial purposes); 44 Pa. Cons. Stat. Ann. § 2318(c) (limiting to law enforcement and humanitarian identification purposes only). Further, both acts enforce the limitations through criminal sanction, thereby reducing concerns of broad information disclosures. See 42 U.S.C. § 14135e(c) (providing criminal penalties for any person who discloses DNA information to unauthorized sources); 44 Pa. Cons. Stat. Ann. § 2332 (the same). While normally, even the slightest suspicionless invasion of protected privacy is unconstitutional, see Chandler v. Miller, 520 U.S. 305, 309 (1997) (highlighting the closely guarded category of permissible suspicionless searches), Johnson has a substantially reduced expectation of privacy. As we stated in Sczubelek, incarcerated offenders "cannot reasonably expect to keep information bearing on their physical identity from the government." 402 F.3d at 185.

We do recognize, however, two differences between Sczubelek and the current matter, but conclude that the distinctions are of no constitutional significance. First, Sczubelek involved an individual on probation, whereas here, Johnson is incarcerated. In Sczubelek, we stated that extraction of a probationer's DNA furthers goals relating to "probation–rehabilitation . . . ." Sczubelek, 402 F.3d at 186. This rationale is not directly applicable to Johnson, who might not receive parole or another form of supervised release. However, we do not believe that this rationale was controlling in Sczubelek.

6

Rather, we held that it is a convicted offender's greatly reduced expectation of privacy in his identity that is dispositive. Sczubelek, 402 F.3d at 185 (discussing criminal offenders generally); see also Groceman, 354 F.3d at 413 (involving an incarcerated offender). The Commonwealth's interest in accurately identifying offenders in future criminal investigations exists irrespective of whether they are on probation or incarcerated.

A second difference exists not in the facts of the two cases, but in the arguments presented and addressed. Here, Johnson appears to argue that there exists a qualitative dimension to the Fourth Amendment–i.e., that the Commonwealth's interest in supporting criminal investigations is unreasonable when applied to crimes other than sex offenses because it is impossible to predict future criminality. Thus, Johnson argues that because statistically he is not likely to reoffend, the Commonwealth's interest in investigating and deterring future crimes is trumped by his retained privacy interests. Johnson's argument is unpersuasive.

Initially, Johnson cites no authority in support of his argument, nor are we able to find any. Moreover, even assuming that Johnson may be less likely to reoffend than other offenders, it does not tip the balance in his favor. As we declare above, Johnson's minimal expectation of privacy is controlling in this instance. Incarcerated murderers have an extremely limited expectation of privacy, if any at all, and thus, the Commonwealth's compelling interest, even if slightly diminished by the nature of Johnson's offense, outweighs Johnson's privacy rights.

7

Accordingly, in light of our holding in Sczubelek, we agree with the District Court that Pennsylvania's extraction and storage of DNA is not unreasonable under the Fourth Amendment.[5] We now turn to Johnson's as applied due process argument.

## III.

To the extent Johnson argues that the Fourteenth Amendment's Due Process Clause is violated by the taking of his DNA, the argument fails. In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court explained that where "the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide . . . ." Id. at 395.

Importantly, Johnson does not argue that his DNA has been improperly used in violation of his right to medical privacy, see Doe v. Delie, 257 F.3d 309, 318 (3d Cir. 2001). Rather, he presents a generalized claim that the extraction of his DNA is unconstitutional under the Fourteenth Amendment. It is evident that the Fourth Amendment governs the constitutionality of searches and seizures. Accordingly, Johnson's argument is not cognizable under substantive due process. We now turn briefly to his retaliation claim.

---

[5] We note that several Pennsylvania cases have addressed this issue, in each instance upholding the DNA Act. See El v. Mechling, 848 A.2d 1094, 1097-98 (Pa. Commw. Ct. 2004); Smith v. Pa. Dep't of Corr., 829 A.2d 788 (Pa. Commw. Ct. 2003); Dial v. Vaughn, 733 A.2d 1 (Pa. Commw. Ct. 1999).

IV.

To succeed in a retaliation claim, Johnson must first prove he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Johnson fails to establish even this first element. He claims that Ogershok unlawfully restricted outside clearance because of his refusal to submit a DNA sample. Based on the holding above, Johnson has no constitutional right to resist sampling. See also, Dial, 733 A.2d at 7 (holding the DNA Act constitutional in 1999). The DNA Act mandates that persons coming under the Act must submit a sample upon request regardless of whether they were so advised during their trial or guilty plea. 44 Pa. Cons. Stat. Ann. § 2316(d.1). Because extracting a DNA sample for the purposes outlined in the DNA Act does not violate the Fourth Amendment, Johnson fails to assert a protected right and his claim must fail.

V.

We conclude that as applied to Johnson, Pennsylvania's DNA Detection of Sexual and Violent Offenders Act does not violate the Constitution. Further, he fails to prove unlawful retaliation. Accordingly, the District Court's order is affirmed.