United States Court of Appeals
Fifth Circuit

**F I L E D**

January 6, 2004

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 02-10810
Summary Calendar

———————

JEFFREY DEAN GROCEMAN AND BRADLEY WILLIAM GROCEMAN,

Plaintiffs-Appellants,

VERSUS

UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES BUREAU OF PRISONS;
FEDERAL BUREAU OF INVESTIGATION,

Defendants-Appellees.

———————

Appeal from the United States District Court
for the Northern District of Texas
m 3:01-CV-1619-G

———————

Before SMITH, DEMOSS, and STEWART,
Circuit Judges.

PER CURIAM:

Jeffrey Groceman and Bradley Groceman are incarcerated pursuant to convictions for armed bank robbery and conspiracy to commit armed bank robbery. They sued three federal entities to enjoin them from collection and re-

tention of samples of their DNA pursuant to the DNA Analysis Backlog Elimination Act of 2000 (the "DNA Act"), 42 U.S.C. §§ 14135-14135e (2001 Supp.) The DNA Act calls for "collection and use of DNA identification information from certain Federal offenders," including persons such as these plaintiffs, who were convicted of the qualifying offense of bank robbery. 42 U.S.C. 14135a(d)(1)(E). DNA samples collected under the statute are

intended for inclusion in the Combined DNA Index System ("CODIS"), a database maintained by the FBI.

Plaintiffs alleged that the collection of the DNA sample was a violation of their Fourth Amendment right against unreasonable searches and seizures. The district court dismissed the complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim. Subsequently, several DNA samples were taken from plaintiffs for inclusion in the CODIS database.

A rule 12(b)(6) order is reviewed *de novo*. A court may not dismiss a complaint pursuant to rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibsom*, 355 U.S. 41, 45-46 (1957).

The extraction of blood from a prisoner to collect a DNA sample implicates Fourth Amendment rights.[1] Nonetheless, collection of DNA from prisoners under the DNA Act is reasonable under the Fourth Amendment. Our decision is informed by *Valasquez v. Woods*, 329 F.3d 420 (5th Cir. 2003) (per curiam), finding a similar Texas DNA collection program constitutional. In *Valasquez*, we accepted the reasoning that although collection of DNA samples from prisoners implicates Fourth Amendment concerns, such collections are reasonable in light of an inmate's diminished privacy rights, the minimal intrusion involved, and the legitimate government interest

in using DNA to investigate crime.[1] *Id*. at 421.

*Valasquez* is in accord with both reason and Supreme Court precedent. Courts may con-

---

[1] In *Valasquez*, 329 F.3d at 421, we noted that, at the time of that decision, every circuit court to consider the issue of DNA collection from inmates under similar statutes had found that they did not violate the Fourth Amendment. The Ninth Circuit has since diverged in its assessment of the issue, holding that inmates have a reasonable expectation of privacy against the collection of DNA samples and that the DNA Act does not fulfill a non-crime prevention need to satisfy the "special needs" exception to the warrant requirement. *United States v. Kincade*, 345 F.3d 1095, 1104-13 (9th Cir. 2003) (applying "special needs" exception to warrant requirement and holding that "immediate purpose" of DNA Act is law enforcement).

The Tenth and Second Circuits have ruled that although inmates have a reasonable expectation of privacy against collection of DNA samples, the "special needs" exception to the warrant requirement is satisfied by DNA collection statutes. *United States v. Kimler*, 335 F.3d 1146, 1146 (10th Cir. 2003), *cert. denied*, 2003 U.S. LEXIS 9142 (U.S. Dec. 8, 2003) (No. 03-7285); *Roe v. Marcotte*, 193 F.3d 72, 78-82 (2d Cir. 1999). The Fourth Circuit maintains, as we did in *Valasquez*, that inmates do not have a reasonable expectation of privacy against DNA collections similar to those described in the DNA Act. *Jones v. Murray*, 962 F.2d 302, 306-07 (4th Cir. 1992) ("While we do not accept even this small level of intrusion for free persons without Fourth Amendment constraint . . . the same protections do not hold true for those lawfully confined to the custody of the state. As with fingerprinting, therefore, we find that the Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them.") (citations omitted.).

---

[1] *See Skinner v. Ry. Labor Executives Ass'n*, 489 U.S 602, 616 ("We have long recognized that a 'compelled intrusio[n] into the body for blood' . . . must be deemed a Fourth Amendment search.").

2

sider the totality of circumstances, including a person's status as an inmate or probationer, in determining whether his reasonable expectation of privacy is outweighed by other factors. *See United States v. Knights*, 534 U.S. 112, 119 (2001); *see also Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Though, like fingerprinting, collection of a DNA sample for purposes of identification implicates the Fourth Amendment, persons incarcerated after conviction retain no constitutional privacy interest against their correct identification. *See United States v. Sanders*, 477 F.2d 112, 113 (5th Cir. 1973); *see also Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992). The DNA Act, accordingly, does not violate the Fourth Amendment, and its application does not infringe these plaintiffs' constitutional rights.

The district court did not err in dismissing the claim. The judgment is AFFIRMED.