Alan Wade JOHNSON, Appellant,

v.

Thomas Alson DAVIS and Gary
L. Johnson, Appellees.

No. 14–04–00206–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 26, 2005.

Rehearing Overruled Nov. 3, 2005.

Alan Wade Johnson, Huntsville, pro se.

Devon Kiritbhai, Mandy Kay McCary, Austin, for appellant.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

All fifty states and the federal government have enacted statutes creating DNA databases. At the heart of this case is a prison inmate's constitutional challenges to the statutory authority of Texas prison officials to collect a blood sample from him for purposes of DNA testing and inclusion in the state's DNA database. The inmate

also challenges the trial court's order transferring venue of his case and the trial court's rulings on various discovery matters. Finding a lack of merit in appellant's constitutional and venue arguments and a lack of merit or a lack of harmful error as to the remaining issues, we affirm the trial court's judgment.

## I. BACKGROUND

Appellant Alan Wade Johnson ("Johnson") is an inmate serving a life sentence for a 1994 conviction for aggravated robbery. He is incarcerated in the Texas Department of Criminal Justice, Institutional Division. Appellee Thomas Alson Davis is a Director of the Texas Department of Public Safety (hereinafter referred to as the "TDPS Director"). Appellee Gary L. Johnson is the Executive Director of the Texas Department of Criminal Justice (hereinafter referred to as the "TDCJ Executive Director"). The Attorney General of the State of Texas represents both appellees.

This suit arises out of Johnson's objection to the extraction of his blood by the State of Texas as part of the state's DNA database system. In September 2001, the Texas Department of Criminal Justice ("TDCJ") took a blood sample from Johnson under Chapter 411, Subchapter G, of the Texas Government Code, entitled "DNA Database System." *See* TEX. GOV'T CODE ANN. §§ 411.141–.154 (Vernon 2005). Johnson's blood sample was sent to the Texas Department of Public Safety ("TDPS") for scientific analysis and maintenance in the DNA database. Johnson did not consent to the taking of the blood sample.

In May 2003, Johnson filed a pro se lawsuit in Travis County, Texas, against the TDPS Director and the TDCJ Executive Director in their official capacities, seeking injunctive relief and a judgment declaring that the Texas DNA statute violates the Texas Constitution. Johnson alleged that this statute allowed a University of Texas Medical Branch nurse to take his DNA without his permission, resulting in a civil assault. Johnson sought no damages in his original petition or in any subsequent pleading, but sued only for injunctive and declaratory relief.

The TDPS Director and the TDCJ Executive Director filed a motion to transfer venue of the case from Travis County to Walker County. The trial court granted the motion and transferred venue of the case to Walker County. Before the Travis County court signed the transfer order, Johnson served requests for admissions, interrogatories, and requests for production of documents on the TDPS Director and the TDCJ Executive Director. Before answering this discovery, the TDPS Director and the TDCJ Executive Director filed special exceptions to Johnson's pleadings, purportedly seeking more specificity with respect to the nature of the acts or omissions they allegedly committed. Additionally, they argued that they were entitled to official and qualified immunity and that they were entitled to more specific pleading with regard to the allegations purportedly made against them in their individual capacities. They argued that because the State had not waived immunity, the trial court lacked jurisdiction over a suit for damages. The TDPS Director and the TDCJ Executive Director sought a protective order from the trial court pending resolution of "jurisdictional issues."

Johnson filed responses to the special exceptions and motion for protection in which he pointed out that the suit had never involved money damages and that neither the TDPS Director nor the TDCJ Executive Director had been sued in his individual capacity. Johnson's pleadings supported these arguments. Neverthe-

less, the trial court granted the special exceptions and the motion for protection.

The TDPS Director and the TDCJ Executive Director then filed a traditional motion for summary judgment in which they asserted that they were entitled to judgment as a matter of law because at least one element of each of Johnson's claims did not exist or all elements of their affirmative defensives were conclusively established. Johnson filed a response to the motion for summary judgment in which he complained that there had not been adequate time to conduct discovery and, on this ground, requested a continuance. In addition, Johnson addressed each of the grounds asserted by the TDPS Director and the TDCJ Executive Director in their summary-judgment motion. The trial court granted the motion for summary judgment and dismissed Johnson's case with prejudice.

## II. Issues Presented

Johnson raises five issues on appeal. First, he claims the trial court erred in applying the law with respect to the TDPS Director and the TDCJ Executive Director's motion to transfer venue. In his second issue, Johnson claims the trial court erred in granting the TDPS Director and the TDCJ Executive Director's motion for summary judgment and in rejecting his constitutional challenges to the Texas DNA statute.[1] In his third and fourth issues, Johnson asserts the trial court erred in ruling on various discovery matters. In his final issue, Johnson asserts the trial court erred in ruling on the TDPS Director and the TDCJ Executive Director's special exceptions and in granting them a protective order.

## III. Analysis

### A. Venue

 Johnson claims the trial court erred in applying the law on the motion to transfer venue. When reviewing a trial court's ruling on a motion to transfer venue, we consider the entire record. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002). In conducting this review, we do not review the trial court's ruling for factual sufficiency of the evidence. *Ruiz v. Conoco*, 868 S.W.2d 752, 758 (Tex.1993). We view all the evidence in a light most favorable to the trial court's ruling, and if there is any probative evidence in the record that venue was proper in the county in which the lower court rendered judgment, we must uphold the trial court's venue determinations. *Id.*

The Travis County district court transferred venue from Travis County, where Johnson filed his suit, to Walker County, the location of the penal institute in which Johnson resides. The trial court took this action under section 15.019(a) of the Texas Civil Practice and Remedies Code, a mandatory venue provision, which states that except in a situation not applicable in this case, "an action that accrued while the plaintiff was housed in a facility operated by or under contract with the Texas Department of Criminal Justice shall be brought in the county in which the facility is located." Tex. Civ. Prac. & Rem.Code Ann. § 15.019(a) (Vernon 2002). Johnson claims venue was also mandatory in Travis County under section 15.017 because his suit included a claim for invasion of privacy. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.017 (Vernon 2002). Relying on *Marshall v. Mahaffey*, Johnson argues that when there are two counties of mandatory

---

1. The trial court and all parties refer to the TDPS Director and the TDCJ Executive Director's summary judgment motion as a *no-*

*evidence* one; however, the record contains only one summary judgment motion, and it is a traditional motion for summary judgment.

venue, the plaintiff's choice between the two is controlling. *See Marshall v. Mahaffey*, 974 S.W.2d 942, 947 (Tex.App.-Beaumont 1998, pet. denied). We need not decide this issue because the venue provision on which Johnson relies applies only in a suit for damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.017 (Vernon 2002). Because Johnson did not seek damages, his reliance on section 15.017 is misplaced. Venue was not mandatory in Travis County.

Johnson was incarcerated within the Texas Department of Criminal Justice and was being housed in Walker County when he filed suit. Therefore, venue was mandatory in Walker County. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.019(a). The trial court did not err in transferring venue of the case to Walker County. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 15.019(a), 15.063(1). Accordingly, we overrule Johnson's first issue.

## B. Summary Judgment

■ Johnson asserts the trial court erred in granting the TDPS Director and the TDCJ Executive Director's motion for summary judgment. In reviewing a traditional motion for summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

Though Johnson did not assert any challenge to the Texas DNA statute under the United States Constitution, he claims this statute violates the Texas Constitution in several respects[2] and that these constitutional infirmities entitle him to injunctive and declaratory relief. Other Texas courts of appeals as well as federal courts have rejected the arguments Johnson makes. For the reasons explained below, we, too, conclude that the Texas DNA statute does not offend the Texas Constitution.

### *Search and Seizure*

■ The nonconsensual extraction of blood implicates article I, section 9 of the Texas Constitution. Tex. Const. art. I, § 9. This provision states:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

*Id.*

The parties have not cited, and we have not found, any appellate court decision holding a DNA collection statute unconstitutional based on constitutional prohibitions against unreasonable searches and seizures. Nonetheless, cases upholding the constitutionality of DNA collection statutes in this regard have employed two different analytical approaches. *See State v. Transou*, No. W2003–02966–CCA–R3–CD, 2005 WL 1154345, at *8–9 (Tenn. Crim.App. May 13, 2005) (listing cases that

---

**2.** Although appellant identifies seven separate constitutional challenges to the Texas DNA statute, in his appellate briefing, he makes no argument and cites no authority to support his contention that the DNA statute violates the ex post facto clause of the Texas Constitu-

tion or that the DNA statute constitutes a bill of attainder. Nor does appellant provide any argument or authority to support his contention that the DNA statute amounts to civil assault.

use either of two approaches to analyzing whether DNA collection statutes violate constitutional prohibitions against unreasonable searches and seizures). A majority of the courts have upheld these statutes under a traditional assessment of reasonableness, considering the totality of the circumstances. *See, e.g., Groceman v. United States Dep't of Justice,* 354 F.3d 411, 413–14 (5th Cir.2004) (per curiam). This balancing test weighs the governmental need for the action against the privacy concern of the individual affected. *See id.* On the other hand, a minority of courts have analyzed DNA collection statutes as falling within the "special needs" exception to the warrant and probable-cause requirement. *See, e.g., In re D.L.C.,* 124 S.W.3d 354, 370–73 (Tex.App.-Fort Worth 2003, no pet.).

We need not decide today which is the correct analytical approach. Under either analysis, we conclude that the Texas DNA collection statute does not violate the search and seizure prohibition in article I, section 9 of the Texas Constitution. *See In re D.L.C.,* 124 S.W.3d at 370–73 (upholding Texas DNA collection statute under "special needs" analysis); *Transou,* 2005 WL 1154345, at *8–10 (upholding Tennessee DNA collection statute under traditional reasonableness test).

### Prohibition Against Self–Incrimination

■ Johnson asserts that the seizure of his DNA amounts to compulsory self-incrimination in violation of article I, section 10 of the Texas Constitution, which reads in pertinent part: "[the accused] shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself...." TEX. CONST. art. I, § 10. Though the Texas Constitution protects a criminal defendant from the compelled production of evidence

which would implicate him in the crime of which he is accused, the extraction of blood for analysis is neither testimonial nor communicative in nature and thus does not offend the Texas Constitution. *See In re D.L.C.,* 124 S.W.3d at 374. For the same reason, federal courts considering the Fifth Amendment's protection against self-incrimination in the context of DNA databases have held that blood extraction for purposes of a statutory DNA database system does not offend the Fifth Amendment. *See Yusov v. Martinez,* No. 00 CIV. 5577(NRB) 2000 WL 1593387, at *5 (S.D.N.Y. Oct. 24, 2000). This same analysis has been applied by at least one Texas court in holding that the Texas DNA database statutory scheme withstands constitutional challenge on the basis of self-incrimination. *See, e.g., In re D.L.C.,* 124 S.W.3d at 374–75. The TDPS Director and the TDCJ Executive Director were entitled to judgment as a matter of law. Accordingly, we overrule Johnson's self-incrimination challenge to the Texas DNA statute.

### Right of Privacy

■ Inmates, because of their incarceration, have diminished privacy interests. Once an individual is convicted on one of the felony offenses included as a predicate offense under the statute, his identity becomes a matter of state interest, and he loses any legitimate expectation of privacy in the identifying information derived from the blood sample. *See Velasquez v. Woods,* 329 F.3d 420, 421 (5th Cir.2003); *Rise v. Oregon,* 59 F.3d 1556, 1559–62 (9th Cir.1995) (reaffirmed by en banc plurality in *United States v. Kincade,* 379 F.3d 813, 831–32 (9th Cir.2004)). Therefore, the trial court correctly ruled that Johnson's right-of-privacy challenge to the Texas statute fails as a matter of law.

### Prohibition Against Ex Post Facto Laws

■ Article I, section 16 of the Texas Constitution prohibits the legislature from passing ex post facto laws. Tex. Const. Art. I, § 16. Johnson argues the Texas DNA statute violates the prohibition against enacting ex post facto laws because it inflicts a greater punishment for his crime by authorizing the TDCJ Executive Director and his agents to punish a prisoner who refuses to submit to DNA sampling by (1) denying the prisoner parole eligibility or release on mandatory supervision, and (2) using force. Johnson also argues the DNA statute, as applied to him, violates the prohibition against ex post facto laws because it became effective after the date of his offense. To determine whether a law violates the ex post facto clause, we first must determine whether by enacting the statute, the Texas legislature intended the statute to be punitive. See Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146, 155 L.Ed.2d 164 (2003); Rodriguez v. State, 93 S.W.3d 60, 66 (Tex.Crim.App. 2002). If we conclude the legislature intended to enact a civil, nonpunitive, nonregulatory scheme, we must examine the statute further and determine whether it·is punitive in purpose or effect so as to prevent courts from viewing it as regulatory or civil in nature. Smith, 538 U.S. at 92, 123 S.Ct. at 1147. We defer to the legislature's stated intent and only the clearest proof will override the legislature's intent, and transform what the legislature has deemed a civil remedy into a criminal penalty. Rodriguez, 93 S.W.3d at 67.

The legislature's express, primary intent in creating a DNA database is to assist federal, state, and local criminal justice or law enforcement agencies in the investigation and prosecution of sex-related offenses or other offenses in which biological evidence is recovered. Tex. Gov't Code Ann. § 411.143(a) (Vernon 2005). The legislature's intent is not to inflict additional punishment on a person for the offense at hand. In re D.L.C., 124 S.W.3d at 365. Despite the intended civil, regulatory nature of the DNA statute, we must address whether the statute is so punitive in effect as to override the legislature's nonpunitive intent. The Texas DNA statute, however, is not so punitive in effect that it prevents us from viewing the DNA statute as regulatory in nature. Id. at 365–69.

Even though the legislature enacted the Texas DNA statute after the date of Johnson's crime, it does not violate the prohibition on ex post facto laws because that statute does not retroactively criminalize acts performed by Johnson before its enactment. See id. at 363. Accordingly, we conclude the Texas DNA statute does not violate the ex post facto clause of the Texas Constitution.

### Separation of Powers

■ Johnson asserts the legislature violated the separation-of-powers doctrine when it created the DNA database by encroaching on the powers of the judicial branch because, under the statute, an inmate who refuses to give a DNA sample cannot be released on parole. Johnson contends that the legislature is, in effect, re-sentencing him. These arguments lack merit.

The power to pass laws is vested in our state legislature. See Tex. Const. Art. III, § 30. As noted, the DNA database is not punitive. Moreover, Johnson has no right to parole. Both state and federal courts have held that Texas prison inmates have no protected liberty interest in parole. See, e.g., Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir.1997); Martin v. Tex. Bd. of Criminal Justice, 60 S.W.3d 226, 230 (Tex.App.-Corpus Christi 2001, no pet.). Therefore, Johnson's contention

that the Texas Legislature violated the separation-of-powers doctrine when it created the DNA database has no merit.

### Prohibition Against Bills of Attainder

■■■■■■ At common law, attainder was "the act of extinguishing a person's civil rights when that person is sentenced to death or declared an outlaw for committing a felony or treason." BLACK'S LAW DICTIONARY 137 (8th ed.1999). A bill of attainder is a legislative act that applies to a named individual or to an easily identified member of a group in such a way as to inflict punishment without a trial. *United States v. Lovett*, 328 U.S. 303, 315, 106 Ct.Cl. 856, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252 (1946). Article I, section 16 of the Texas Constitution provides that, "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. Art. I, § 16. Johnson asserts that the DNA statute is punitive because it extinguishes his right to be free from terroristic threats, assault, search and seizure of his blood, and taking his genetic property for public use. He also asserts the statute preempts his right to be free from being compelled to give evidence against himself, is an invasion of his and his family members' right to privacy, and denies him due course of law.

Because the DNA database system does not involve punishment, it does not violate the prohibition against bills of attainder. *See Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir.1999). Accordingly, Johnson's claim lacks merit. The trial court did not err in granting summary judgment rejecting this constitutional challenge to the DNA statute.

### Civil Assault

■■■■■■ To establish a prima facie claim for civil assault, the plaintiff must establish the same elements required for criminal assault. *See Moore's Inc. v. Garcia*, 604 S.W.2d 261, 264 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.). Under Texas Penal Code section 22.01(a)(3), an assault occurs when a person intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PEN.CODE ANN. § 22.01(a)(3) (Vernon Supp.2004–2005). In his petition, Johnson alleged that Carla Hollman, a phlebotomist allegedly acting as agent of the TDCJ Executive Director, took a blood sample from him without his permission. In their motion for summary judgment, the TDPS Director and the TDCJ Executive Director assert that Johnson could not pursue a viable claim for civil assault against them because neither they nor their respective agencies were involved in the actual taking of the DNA specimen from Johnson. They further assert that they could not have assaulted Johnson because neither of them came into contact with Johnson.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to the record. TEX.R.APP. P. 38.1(h). We must interpret this requirement reasonably and liberally. *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004). However, parties asserting error on appeal must put forth some specific argument and analysis showing that the record and the law supports their contentions. *See* TEX.R.APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet. h.). In his opening brief, Johnson lists assault as one of the seven constitutional challenges he asserted in his petition and argues that "the seizure of his DNA amounts to a confession wrestled from his

body by physical assault." He does not, however, provide any argument, analysis, or citations to any legal authority or to the record demonstrating that the law and the record support his contention that the taking of a blood sample from him without his consent constitutes civil assault or addressing the summary judgment grounds asserted against this claim. In his reply brief, Johnson devotes a third of a page to responding to the argument of the TDPS Director and the TDCJ Executive Director addressing Johnson's civil assault allegation in his petition, but he provides no citations to the record or to any legal authority. Even under a liberal construction, Johnson's appellate briefing on this issue is not sufficient to articulate a clear and concise argument as to why we should reverse the trial court's judgment. Because Johnson's civil assault issue is inadequately briefed, he has waived this argument.

Having found that Johnson waived his civil assault issue and that the trial court correctly granted summary judgment as to Johnson's constitutional challenges, we overrule Johnson's second issue.

### C. Admissions

In his third issue, Johnson asserts the trial court erred in applying the law in denying his motion to deem matters admitted following the TDPS Director and TDCJ Executive Director's failure to respond to requests for admissions. A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996). We will set aside the trial court's ruling only if the record shows that the trial court clearly abused its discretion. *See Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987).

Johnson served requests for admissions on the TDPS Director and the TDCJ Ex-

ecutive Director. Although they answered these requests, they did not file their responses within the prescribed time. Johnson asserts that the trial court should have deemed the requests admitted or, to the extent the requests were deemed admitted automatically, the trial court should not have "undeemed" them. Johnson argues that howsoever we construe the trial court's ruling, the trial court erred in permitting the TDPS Director and the TDCJ Executive Director to rely on responses and objections filed two days late.

A party may withdraw a deemed admission if (1) the party shows good cause for the withdrawal, and (2) the court finds that the parties relying upon the responses will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to withdraw the admission. Tex.R. Civ. P. 198.3. A party can establish good cause by showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference. *Stelly,* 927 S.W.2d at 622.

The trial court has discretion to allow a responding party to file discovery responses two days late. We cannot say the trial court abused its discretion in allowing the late filing of these discovery responses and objections. Accordingly, we overrule Johnson's third issue.

### D. Motion to Compel and Motion for Sanctions

In his fourth issue, Johnson complains that the trial court erred in denying his motion to compel the TDPS Director and the TDCJ Executive Director to respond to his discovery requests. Johnson also asserts that the trial court erred in denying his motion for sanctions. Johnson contends that both the TDPS Director and the TDCJ Executive Director were two

days late in filing responses to his requests for the production of documents and that their trial counsel "demonstrated reckless disregard to Texas Rules of Civil Procedure, Texas Practice and Remedies Code, [and] Texas State Bar Disciplinary Rules of Professional Conduct." According to Johnson, trial counsel for the TDPS Director and the TDCJ Executive Director erroneously stated that Johnson was proceeding in forma pauperis when he was not and that she made other allegedly inaccurate statements in filings with the trial court. Johnson also alleges that the TDPS Director and the TDCJ Executive Director engaged in a pattern of discovery abuse by filing frivolous discovery objections and submitting a false discovery certification. Additionally, Johnson asserts that the trial court erred in not imposing sanctions against these parties and their counsel.

■ We review a trial court's ruling on a motion to compel discovery and for discovery sanctions under an abuse-of-discretion standard. *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004). Trial courts have broad discretion in matters of discovery. Although the TDPS Director and the TDCJ Executive Director did not file their discovery responses on time, their failure to do so is not necessarily sanctionable conduct. Likewise, although there may have been inaccuracies in their filings, the presence of inaccuracies or other deficiencies does not mandate sanctions. The trial court has broad discretion in ruling on such matters, and its failure to impose sanctions under these circumstances does not amount to an abuse of discretion. Finding no merit in appellant's arguments, we overrule his fourth issue.

### E. Other Rulings

In his fifth and final issue on appeal, Johnson asserts the trial court abused its discretion in denying his motion to set aside the trial court's order sustaining the TDPS Director and the TDCJ Executive Director's special exceptions and granting them a protective order. We construe this appellate issue to fairly subsume the propriety of the trial court's granting of the special exceptions and protective order. *See* Tex.R.App. P. 38.1(e).

### *Special Exceptions*

■ We review a trial court's ruling on special exceptions for an abuse of discretion. *Bader v. Cox,* 701 S.W.2d 677, 686 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). In making this determination, we review the pleadings and construe the petition liberally, accepting as true all the factual allegations set forth. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988).

The TDPS Director and the TDCJ Executive Director filed special exceptions to Johnson's petition, asserting, among other things, that his pleading failed to allege waiver of sovereign immunity by the individuals named as defendants. The TDPS Director and the TDCJ Executive Director asserted that they were being sued in their official capacities as directors of the TDPS and the TDCJ, and thus they were entitled to sovereign immunity and could not be sued without the state's consent. They further asserted that they were entitled to a clear and concise statement setting forth the acts and/or omissions on which Johnson purportedly relied to establish a waiver of sovereign immunity.

Additionally, the TDPS Director and the TDCJ Executive Director specially excepted to Johnson's petition in its entirety because, they claim, Johnson allegedly failed to state with particularity the nature of the acts or omissions allegedly committed by the TDPS Director and the TDCJ Executive Director that rose to the level of a violation of the Texas Constitution. Fi-

nally, the TDPS Director and the TDCJ Executive Director specially excepted to Johnson's pleading because, to the extent he sought relief against them in their individual capacities, he did not state facts overcoming their entitlement to official immunity and did not identify with particularity the nature of the acts or omissions allegedly committed by each of them.

Johnson's pleadings did not contain any of the defects alleged by the TDPS Director and the TDCJ Executive Director. Contrary to the allegations in their special exceptions, Johnson did not sue for damages and he did not sue the TDPS Director and the TDCJ Executive Director in their individual capacities. Johnson filed a response in the trial court in which he noted that he sought only injunctive and declaratory relief, emphasizing that "[n]o money damages have ever been sought." Johnson further noted that he was suing the TDPS Director and the TDCJ Executive Director only "in their official capacity as directors of TDCJ and DPS" and that he did not need the state's consent to sue for injunctive and declaratory relief challenging an unconstitutional statute.

Nevertheless, the trial court sustained all of the special exceptions and ordered Johnson to replead and to cure the alleged defects in his petition. The trial court's order warned that if Johnson failed to do so by October 3, 2003, the trial court would strike each allegedly defective paragraph of his pleading. The trial court signed this order on October 3, 2003, and the order was not filed with the district clerk until October 7, 2003. Johnson asserts the trial court abused its discretion in sustaining the special exceptions. He complains that the special exceptions were based on "dishonest pleadings, that had no basis in law or fact." Additionally, Johnson notes that compliance with the order was impossible because the deadline for repleading was the same date on which the trial court signed the order.

The record supports some of Johnson's allegations. However, even presuming the trial court erred in sustaining the special exceptions, this error did not likely cause the rendition of an improper judgment or prevent Johnson from properly presenting the case on appeal. *See* Tex.R.App. P. 44.1(a). Although the trial court's order warned that Johnson's pleadings would be stricken if he failed to replead, Johnson did not replead, and the trial court never took any action *vis-à-vis* striking his pleading or otherwise enforcing its order granting the special exceptions. Any error in sustaining these special exceptions would not affect the correctness of the trial court's order granting summary judgment. Therefore, even if the trial court erred in sustaining the special exceptions, this error is not reversible.

### Protective Order

We review a trial court's ruling on a motion for protection under an abuse-of-discretion standard. *See Shell Oil v. Smith,* 814 S.W.2d 237, 241 (Tex.App.-Houston [14th Dist.] 1991, no writ). In their motion for protective order, the TDPS Director and the TDCJ Executive Director made some inaccurate statements, including the following:

- Johnson was proceeding in forma pauperis.
- Johnson was suing for damages.
- Johnson was suing the TDPS Director and the TDCJ Executive Director in their individual capacities.

These statements formed the entire basis for the TDPS Director and the TDCJ Executive Director's motion for protection from responding to discovery propounded by Johnson. The TDPS Director and the TDCJ Executive Director sought protection from discovery while the alleged "ju-

risdictional issues," which were based on their claim of immunity, were pending, and this immunity defense was based entirely on the inaccurate statements set forth above. Just as there was no basis for granting the special exceptions (because Johnson's pleading did not suffer from the alleged deficiencies), there was no basis for the protective order because the only ground on which the protective order was based—pending jurisdictional issues based on immunity—did not exist. *See Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Contrary to the statements in the protective order, Johnson had not asserted claims that would have triggered immunity or "jurisdictional issues." *See id.* To the extent the trial court found otherwise, it erred.

Even though the trial court erred in ruling on the protective order, the error is not reversible because the record shows that any such error did not probably cause the rendition of an improper judgment or prevent Johnson from properly presenting the case on appeal. *See* Tex.R.App. P. 44.1(a). The summary judgment was based on law points; it did not turn on factual issues but rested entirely on a legal analysis of constitutional issues. The fact-based discovery from which the TDPS Director and the TDCJ Executive Director were improperly protected, if answered timely, would not have helped Johnson defeat the summary judgment on the constitutional issues. Therefore, the trial court's error was harmless. Accordingly, we overrule Johnson's fifth and final issue.

Having overruled all of Johnson's appellate issues, we affirm the trial court's judgment.