COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-040-CV

 

 

GEORGE DAVID GORDON, JR.,                                                     APPELLANTS

A/K/A
G. DAVID GORDON;

AMY
GORDON; AND G. DAVID

GORDON
& ASSOCIATES, P.C.,

AN
OKLAHOMA PROFESSIONAL

CORPORATION

 

                                                             V.

 

ROBERT A. BRUNIG                                                                            APPELLEE

 

                                                       ------------

 

               FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I.  Introduction








In
three issues, Appellants George David Gordon, Jr., a/k/a G. David Gordon; Amy
Gordon; and G. David Gordon & Associates, P.C., an Oklahoma professional
corporation, appeal the trial court=s
rulings denying their motion to withdraw deemed admissions and denying their
requested jury charge instructions and questions.  We will affirm.

II.  Factual and Procedural Background

On
August 25, 2003, the Securities and Exchange Commission (ASEC@)
issued an AOrder
Directing Private Investigation and Designating Officers to Take Testimony@ in In
the Matter of Lifestyle Innovations, Inc. (FW-2574).  The order identified Lifestyle Innovations,
Inc. and another corporation and directed that a private investigation be
conducted to determine whether any persons had engaged in violations of
multiple sections of the Securities Act of 1933 and the Securities Exchange Act
of 1934.[2]








In
November 2003, the SEC served subpoenas, including one to Amy Gordon,
requiring, among other things, the production of documents.  Amy Gordon did not fully comply with the
subpoena.  In December 2003, the SEC
filed an AApplication
for Order to Show Cause and Order Requiring Obedience to Subpoena@ in
federal court, requesting a court order enforcing the previously issued
subpoenas.[3]  The trial court thereafter entered orders to
show cause directed at Amy Gordon and other persons and entities.

According
to Appellee Robert A. Brunig, in January 2004, David Gordon retained Brunig to
represent Amy Gordon in connection with the SEC=s
subpoena enforcement action (No. 4:03-CV-1478-A) and accepted Brunig=s
offer to perform legal services for $300 per hour.  At the request of David Gordon, Brunig=s
role was subsequently expanded to include the representation of David Gordon
and G. David Gordon & Associates in connection with the SEC=s
investigation in In the Matter of Lifestyle Innovations, Inc. (FW-2574).  Brunig thereafter performed legal services
for Appellants and provided them with periodic billing statements.  Two payments were made to BrunigCone
in the amount of $2,500 and another in the amount of $5,000.[4]








Brunig,
acting pro se, sued Appellants in June 2007. 
His second amended petition alleged, among other things, claims for suit
on a sworn account, averring that Appellants owed him $15,149.88 for legal
services performed, and for attorney=s
fees.  Appellants alleged several
counterclaims, contending that Brunig had been retained to represent Lifestyle
Innovations and Amy Gordon; that any services he provided for Amy Gordon, David
Gordon, and G. David Gordon & Associates had been paid in full; that the
only client of Brunig that remained indebted to him was Lifestyle Innovations;
and that none of the Appellants had ever agreed that they would be responsible
for Lifestyle Innovation=s attorney=s
fees.

Brunig
made discovery requests of Appellants, including a request for admissions.  According to Brunig=s
Eighth Affidavit, he served his first request for admissions on Appellants=
counsel via facsimile and email on May 27, 2008.[5]  Brunig subsequently posited that the
admissions were deemed admitted because Appellants=
responses thereto were due June 30, 2008, but were not served until July 3,
2008.

On
July 25, 2008, Appellants filed a motion to set aside the deemed admissions and
to deem the responses and objections timely.[6]  The trial court granted Appellants=
motion to set aside the deemed admissions, determining that Brunig=s
first request for admissions was not served until July 26, 2008, and ordering
that Appellants= responses to that request
be served by August 28, 2008.








On
September 15, 2008, Brunig filed his Eighth Affidavit, in which he stated that
Appellants=
responses to his first request for admissions were due August 28, 2008, but
were not served until September 4, 2008, and, therefore, that he wasCagainCconsidering
the matters addressed in his first request for admissions deemed admitted.

On
September 19, 2008, Appellants filed a motion to declare their September 4,
2008 responses to Brunig=s July 26, 2008 request for
admissions timely served.  Like the
argument made at the hearing on their first motion to declare the responses
timely served, Appellants argued in this motion that they had responded timely to
Brunig=s
first request for admissions because they had served Brunig with responses on
July 3, 2008.  At a hearing on October 2,
2008, the trial court denied Appellants=
motion, again reiterating that the July 3, 2008 responses had been set
aside.  The trial court also continued
the trial, which had been set for October 6, 2008, until October 27, 2008.

On
October 6, 2008, Appellants filed a motion to set aside the deemed admissions.  At a hearing on the motion on October 10,
2008, Appellants argued that good cause existed to set aside the deemed
admissions and that Brunig would not be prejudiced if the deemed admissions
were set aside.  The trial court denied
the motion.








At
trial, the trial court permitted Brunig to read each of the deemed admissions
to the jury, directed a verdict in Brunig=s
favor on his sworn account claim, denied Appellants=
requested jury instructions and questions, and submitted one question to the
jury concerning Brunig=s claim for attorney=s
fees.[7]  The jury awarded Brunig $27,500 in attorney=s
fees.

III.  Deemed Admissions

In
their first issue, Appellants argue that the trial court erred by denying their
October 6, 2008 motion to set aside deemed admissions because (1) they
served responses to Brunig=s
first request for admissions on July 3, 2008, and (2) they demonstrated
good cause for the withdrawal of the admissions.








When
a party fails to answer a request for admissions, the matters therein are
deemed admitted.  Tex. R. Civ. P.
198.2(c); Wal-Mart Stores, Inc. v. Deggs, 968 S.W.2d 354, 355 (Tex.
1998).  Such admissions are Aconclusively
established as to the party making the admission unless the court permits the
party to withdraw or amend the admission.@  Tex. R. Civ. P. 198.3.  The trial court may permit a party to
withdraw deemed admissions if the party shows good cause for the withdrawal and
the court finds that the parties relying on the admissions will not be unduly
prejudiced and the presentation of the merits of the action will be subserved
by the withdrawal.  Id.; Deggs,
968 S.W.2d at 356.  Good cause is thus
the threshold standard for withdrawal of deemed admissions and is established
by showing that the failure involved was an accident or mistake, rather than
intentional or the result of conscious indifference.  Wheeler v. Green, 157 S.W.3d 439, 442
(Tex. 2005); Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996).

A
trial court has broad discretion to permit or deny the withdrawal of deemed
admissions.  Stelly, 927 S.W.2d at
622.  An appellate court should set aside
the trial court=s ruling only if, after
reviewing the entire record, it is clear that the trial court abused its
discretion.  Id.  A trial court abuses its discretion when it
acts without reference to guiding rules or principles or acts arbitrarily or
unreasonably.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).

A.      July 3, 2008 Responses








Appellants
argue that the trial court erred by denying the motion to set aside deemed
admissions because they served responses to Brunig=s
first request for admissions on July 3, 2008, and, therefore, served Brunig
with responses to the first request for admission before the August 28, 2008
due date.  The record demonstrates that
the trial court considered this argument on more than one occasion and that it
rejected it each time.  Specifically, at
the August 15, 2008 hearing on Appellants=
July 25, 2008 motion to set aside the deemed admissions, the trial court
explained that it was setting aside the deemed admissions because Brunig had
failed to properly serve Appellants with the requests.  The trial court determined that Brunig had
properly served Appellants with the first request for admissions on July 26,
2008, and that Appellants= responses were due August
28, 2008.  Having determined that Brunig
did not serve Appellants with his first request for admissions until July 26,
2008, the trial court made clear that Appellants could not rely on the
responses that they had served Brunig on July 3, 2008, in response to Brunig=s
earlier, improperly served first request for admissions.  The following exchange occurred:

THE
COURT:  If you want him to answer the
Request for Admissions, then you need to send them to him by mail.

 

BRUNIG:  Well, I have sent it to him by certified mail
since then, but the other - -.

 

THE COURT:  Has he answered them yet?

BRUNIG:  What he=s saying is let me rely on what I sent you
back on July 3rd.

 

THE
COURT:  No, he=s got to start all
over just like you do.

 

The following exchange also
occurred:

[Appellants= counsel]: . . .  But I=m looking at my answers right now, and I=m counting - - the
first 20 of them are admitted.  I see
more admissions on the back.

 

THE
COURT:  I don=t want to hear about
that, because those things haven=t even been [served] yet, as far as I=m concerned.

 

Appellants
made the same argument at the October 2, 2008 hearing on Appellants=
September 19, 2008 motion to declare the responses timely served. The trial
court rejected it, again:








[Appellants= counsel]:  They were late.  Now, I wanted to get the amendeds done
earlier.  I didn=t for a personal
reason.  I=ll be happy to tell
you, but what Mr. Brunig is trying to argue is that the original July ones don=t count.

 

THE COURT:  They don=t.

[Appellants=
counsel]:  Why not?

THE COURT:  Because I set all of that aside.

[Appellants= counsel]: You set
aside that they were deemed, because you said that service was defective, but -
-

 

THE
COURT:  Yeah, and then I started a new
program.  Let=s start from scratch,
and if you filed them late, then they are deemed admitted.

 

Trial
courts have broad discretion in matters of discovery.  Johnson v. Davis, 178 S.W.3d 230, 242
(Tex. App.CHouston
[14th Dist.] 2005, pet. denied).  Having
set aside both the deemed admissions and Appellants=
July 3, 2008 responses thereto, we hold that the trial court did not abuse its
discretion by denying Appellants=
October 6, 2008 motion to set aside deemed admissions, which argued in part
that Appellants served responses to Brunig=s
first request for admissions on July 3, 2008. 
We overrule this part of Appellants=
first issue.

B.      Good Cause








Appellants
also argue that they established good cause for the withdrawal of the deemed
admissions.  Appellants=
counsel attached his affidavit to the October 6, 2008 motion to set aside the
deemed admissions.  Therein, counsel
stated that his failure to timely respond to Brunig=s
first request for admissions was the result of accident or mistake because
(1) he had a motion for rehearing due on September 2, 2008, in an appeal
in the Beaumont Court of Appeals and (2) he was out of town when the responses
were due because, on August 20, 2008, he had calendared a Ashort
personal trip@ to
Las Vegas with a close friend and had departed August 27, 2008, and returned
August 30, 2008. Regarding the motion for rehearing due in the appeal, counsel
indicated that he was Acompletely and totally
engrossed in the record@ around the time that
Appellants=
responses to Brunig=s first request for
admissions were due.  And as for his
calendaring the Las Vegas trip at the same time the responses were due, counsel
stated that he Asimply overlooked the entry.@  Counsel=s
argument at the hearing on the motion mirrored the information attested to in
the affidavit.








In
light of Appellants= counsel=s
affidavit and argument and the relevant portions of the record, the trial court
could have reasonably concluded that counsel made the conscious decision to work
on the motion for rehearing and to travel to Las Vegas instead of timely
serving the responses by August 28, 2008. 
Unlike in Boulet v. State, counsel did not miss the deadline for
responding to the first request for admissions because of a calendaring error. See
189 S.W.3d 833, 836B37 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  Unlike in Spiecker
v. Petroff, counsel did not miss the deadline for responding to the request
for admissions because of a clerical error. 
See 971 S.W.2d 536, 540 (Tex. App.CDallas
1997, no pet).  And unlike in Deggs,
counsel did not learn about the existence of the deemed admissions for the
first time at trial.  See 968
S.W.2d at 356.  Instead, Appellants=
counsel missed the due date, which he had properly calendared, because he was
working on a motion for rehearing and because he went out of town on a personal
trip.[8]  Counsel does not indicate that his
preoccupation with the motion for rehearing caused him to miss the deadline for
serving Appellants= responses; rather, he
merely contends that he was busy.  And
although counsel stated that he overlooked the entry on his calendar regarding
the due date for the admissions when he scheduled his trip to Las VegasCwhich
he did on August 20, 1998, a full eight days before the responses were even dueChe
also confirmed that he took the trip because he was beginning a Anew
coaching season@ on September 2, 2008, and
that Aif
[he] didn=t
take [the] short 4-day vacation then, [he] may not get one at all for a very
long time.@








The
admissions had already been deemed and set aside once, and Appellants delayed
in filing the October 6, 2008 motion to set aside the deemed admissions until
after the trial court had denied the September 19, 2008 motion to declare their
responses to Brunig=s requests for admissions
timely served, which Appellants filed just over two weeks before the date the
case was set for trial and which was based on an argument that the trial court
had previously addressed and denied several times, as explained above.  See Webb v. Ray, 944 S.W.2d 458, 461B62
(Tex. App.CHouston
[14th Dist.] 1997, no writ) (reasoning that counsel=s
actions show a consistent pattern of neglect and indifference).

Accordingly,
we cannot conclude that the trial court acted arbitrarily or unreasonably or
without reference to guiding rules and principles by concluding that Appellants
failed to demonstrate good cause for the withdrawal of the deemed
admissions.  See Stelly, 927
S.W.2d at 622; Downer, 701 S.W.2d at 241.  We hold that the trial court did not abuse
its discretion by denying Appellants=
motion to set aside the deemed admissions, and we overrule the remainder of
Appellants=
first issue.[9]

IV.  Jury Charge Instructions and QuestionsCAContract
Issues@ and ARepresentative
Capacity Issues@

 








In
their second issue, Appellants argue that the trial court erred by denying
their proposed jury charge instructions, questions, and definitions regarding Acontract
issues@ and
Arepresentative
capacity issues.@  Citing Marshall v. Vise, 767 S.W.2d
699, 700 (Tex. 1989), Appellants argue that they introduced evidence that
Brunig was never retained to represent David Gordon or G. David Gordon &
Associates but rather only Lifestyle Innovations, Paul Johnson, and Amy Gordon;
that this evidence controverted the deemed admissions; that Brunig did not
object to this evidence; and that legally sufficient evidence therefore existed
requiring the submission of the proposed instructions, questions, and
definitions.[10]

Once
admitted, an admission, deemed or otherwise, is a judicial admission, and a
party may not then introduce testimony to controvert it.  Id. However, admissions can be waived if
the party relying on deemed admissions does not protect the record by objecting
to the introduction of controverting evidence and obtaining a ruling on the
objection.  Id.; Willowbrook
Foods, Inc. v. Grinnell Corp., 147 S.W.3d 492, 503 (Tex. App.CSan
Antonio 2004, pet. denied).  An objection
is required, however, only when the offered evidence clearly contradicts the
admissions.  Willowbrook Foods,
147 S.W.3d at 503.

Appellants
contend that the following evidenceCwhich
Brunig did not object toCcontroverted the deemed
admissions:

×Brunig testified on
cross-examination that he knew that David Gordon was an attorney for Lifestyle
Innovations.

 

×Brunig acknowledged
that neither David Gordon nor G. David Gordon & Associates were respondents
to the federal lawsuit.

 

×Having reviewed
several documents, Timothy McCole testified that he Awould assume that
[Brunig] represented Lifestyle.@

 

×David Gordon
testified that he was Lifestyle Innovations= attorney for many years.

 

×Brunig=s billings reference ASEC v. Lifestyle
Innovations, et al@ and AIn re Lifestyle
Innovations, Inc.@








 

×Appellants=
exhibits show that neither David Gordon nor G. David Gordon & Associates
were parties to the federal court case and that Brunig announced at several
hearings that he represented Amy Gordon, Lifestyle Innovations, and Paul
Johnson.

Appellants do not identify
which deemed admissions this evidence purportedly controverts.  Having reviewed each of the deemed
admissions, and considering Appellants=
only argument that Brunig was never retained to represent David Gordon or G.
David Gordon & Associates, we conclude that Appellants=
purported controverting evidence specifically implicates only one of the deemed
admissions:  number 28, which addresses
David Gordon=s
decision to expand Brunig=s representation of Amy
Gordon to include representation of David Gordon and G. David Gordon &
Associates.  It states,

[A]t
the request and direction of George David Gordon, Jr., Robert A. Brunig=s role was expanded
to include the representation of the interests of George David Gordon, Jr., and
G. David Gordon & Associates, as well as . . . Amy Gordon in connection
with the United States Securities and Exchange Commission=s investigation in In
re: Lifestyle Innovations, Inc., Matter No. FW-02574A SEC.

 








But none of the evidence
that Appellants direct us to clearly controverted deemed admission number
28.  In other words, none of the evidence
demonstrates or raises any inference or issue that David Gordon did not expand
Brunig=s
representation of Amy Gordon to include representation of David Gordon and G.
David Gordon & Associates; rather, the evidence raises issues regarding
Brunig=s
representation of Lifestyle Innovations. 
And even if Brunig did represent Lifestyle Innovations, as Appellants
contend, the purported controverting evidence relied on by Appellants does not
demonstrate that Brunig represented Lifestyle Innovations to the exclusion of
any representation of David Gordon and G. David Gordon & Associates.  Accordingly, we hold that the trial court did
not abuse its discretion by denying Appellants=
proposed jury charge instructions, questions, and definitions regarding Acontract
issues@ and
Arepresentative
capacity issues.@  See Akin v. Santa Clara Land Co., Ltd., 34
S.W.3d 334, 345 (Tex. App.CSan
Antonio 2000, pet. denied) (stating that the standard of review for an alleged
error in the jury charge is abuse of discretion). We overrule Appellants=
second issue.

V.  Proposed Jury Charge QuestionsCUnderlying
Claim Damages and Attorney=s Fees

In
their third issue, Appellants argue that the trial court erred by not
submitting separate jury questions for each defendant inquiring into
(a) damages for the sworn account claim and (b) reasonable and
necessary attorney=s fees for Brunig=s
attorney=s
fees claim.[11]








As
detailed above, no evidence contradicted or controverted the deemed admissions,
and the trial court directed a verdict in Brunig=s
favor on his sworn account claim. 
Because the trial court directed a verdict for Brunig, it did not submit
the issue to the jury.  Because the trial
court did not submit the issue to the jury, it did not err by not submitting
separate questions for each defendant inquiring into damages for the sworn
account claim.  Appellants do not argue
that the trial court erred by granting a directed verdict in favor of Brunig on
his sworn account claim, nor do we interpret Appellants to raise that argument
in this issue.  We overrule this part of
Appellants=
third issue.








As
for Appellants=
argument that the trial court should have submitted separate questions for each
defendant inquiring into the amount of reasonable and necessary attorney=s
fees incurred by Brunig as part of his prosecution of the case against each
defendant, Appellants set forth no citation to any authority to support this
contention, nor have we located any after our own search.  The only authority cited by Appellants in the
entirety of the third issue is Stewart Title Guar. Co. v. Sterling, 822 S.W.2d
1, 11 (Tex. 1991), which addresses a segregation issue not asserted by
Appellants in this argument.[12]
Therefore, we hold that this part of Appellants=
third issue is inadequately briefed and, consequently, not preserved for
appellate review.  See Tex. R.
App. P. 38.1(i) (requiring appellate brief to contain a clear and concise
argument for the contentions made, with appropriate citations to authorities); Gray
v. Nash, 259 S.W.3d 286, 294 (Tex. App.CFort
Worth 2008, pet. denied) (holding that appellee waived argument because she
cited no authority whatsoever in support thereof).  We overrule the remainder of Appellants=
third issue.

VI.  Conclusion

Having
overruled Appellants= three issues, we affirm the
trial court=s
judgment.

 

 

BILL MEIER

JUSTICE

 

PANEL:  MCCOY and MEIER, JJ.; and DIXON W. HOLMAN
(Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  May 20, 2010

 











[1]See Tex. R. App. P. 47.4.





[2]Specifically,
according to the SEC, the investigation sought to determine whether David
Gordon, D. Mark White, and possibly othersCacting through entities and individuals they
controlled, including Lakewood Development Corporation, Amy Gordon, and Paul
JohnsonCmay have secretly
acquired control over the management of Lifestyle Innovations, caused the
company to file false and misleading reports with the SEC, and illegally sold
the company=s shares into the
public market.





[3]The cause was
assigned No. 4:03-CV-1478-A.





[4]The check in the
amount of $2,500 was drawn on the AG. David Gordon & Associates, P.C.@ account, and the
check in the amount of $5,000 was drawn on the AG. David Gordon &
Associates, P.C. Trust@ account.





[5]The first request for
admissions sought admissions regarding, among other things, the SEC=s actions in FW-2574
and No. 4:03-CV-1478-A, the numerous billing statements sent to G. David Gordon
& Associates, and Appellants= failure to pay Brunig $15,149.88.





[6]We construe the part
of Appellants= motion requesting
the trial court to deem responses and objections timely as requesting the trial
court to deem the July 3, 2008 responses to Brunig=s requests for
admission timely.





[7]In addition to
setting forth Afactors to consider
in determining the reasonableness of attorney=s fees,@ the question asked, AWhat is a reasonable
fee for the necessary services of Robert A. Brunig as attorney=s fees for the
prosecution of this case, stated in dollars and cents?@





[8]The cases that
Appellants rely upon are inapposite.  See
City of Houston v. Riner, 896 S.W.2d 317, 319B20 (Tex. App.CHouston [1st Dist.]
1995, writ denied) (sustaining appellant=s argument that the trial court abused its
discretion by refusing to permit the withdrawal of deemed admissions because
appellants were not aware of the request for admission until trial); N.
River Ins. Co. of New Jersey v. Greene, 824 S.W.2d 697, 701 (Tex. App.CEl Paso 1992, writ
denied) (sustaining appellant=s good cause argument
based on a calendar entry error).





[9]Having determined
that the trial court did not abuse its discretion by denying Appellants= motion for lack of
good cause, we need not address Appellants= undue prejudice argument.  See Tex. R. App. P. 47.1; Deggs,
968 S.W.2d at 356.





[10]Appellants do not
challenge the trial court=s decision to grant
Brunig a directed verdict.





[11]At the outset of the
third issue, Appellants state that Brunig Awas required to segregate his attorney[>]s fees as to both
clients and claims in his underlying claim for past due attorney[>]s fees as well as
for the attorney=s fees claims
necessitated by the case at bar.@ 
Notwithstanding this wording, Appellants= argument does not
raise an attorney=s-fees-segregation
issue, i.e., that Brunig was required to segregate fees between claims for
which they are recoverable and claims for which they are not recoverable.





[12]To the extent
Appellants mean to argue that Brunig was required to segregate his attorney=s fees as detailed in
Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310B14 (Tex. 2006), this
argument is waived as inadequately briefed because Appellants set forth no
argument or analysis addressing the facts of this case in light of Chapa=s holding that A[i]ntertwined facts
do not make tort fees recoverable; it is only when discrete legal services
advance both a recoverable and unrecoverable claim that they are so intertwined
that they need not be segregated.@  See
id. at 313B14; see also Tex.
R. App. P. 38.1(i).