

# NUMBER 13-22-00515-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ENRIQUE O. GUILLEN AND
VICTORIA GUILLEN,                                                                 Appellants,

v.

CRISTIAN ANDRES GOMEZ AND
LOS FRESNOS CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT,                                          Appellees.

## ON APPEAL FROM THE 445TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice Cron**

This case arises from a fender bender that occurred in the Los Fresnos High

School parking lot. Proceeding pro se, appellants Enrique O. Guillen and Victoria Guillen

appeal from three orders: an interlocutory order granting appellee Los Fresnos Consolidated Independent School District's plea to the jurisdiction; another interlocutory order denying the Guillens' motion to rejoin the School District to the suit; and a final order granting appellee Cristian Andres Gomez's combined no-evidence and traditional motion for summary judgment. In what we construe as three primary issues, which we have reorganized, the Guillens complain that the School District was improperly dismissed from the suit; the trial court failed to "enforce" the Texas Rules of Civil Procedure with respect to the Guillens' discovery requests and "conspired" with other public servants to deny them due process; and summary judgment was improper because the Guillens raised material fact issues on their claims against Gomez. We affirm.

## I.     BACKGROUND

The incident occurred during student dismissal on May 17, 2018, at approximately 3:45 p.m. Enrique, driving a Toyota Tundra, had picked up his daughter Victoria and was attempting to exit the parking lot when they were involved in a collision with a Dodge Caliber driven by Gomez. Enrique contends that Gomez was at fault and intentionally caused the collision. After reviewing surveillance video of the incident, School District police officer Daniel Tamez filed a Texas Peace Officer's Crash Report faulting Enrique for causing the accident. Specifically, Tamez concluded that Enrique passed a stopped vehicle, failed to control his speed, and struck Gomez's vehicle while "attempting to merge back into the traffic lane."

Proceeding pro se, Enrique filed suit against the School District and Gomez.[1]  With

---

[1] Enrique also sued Allstate, Gomez's auto insurance carrier, but Allstate was dismissed from the

respect to the School District, Enrique alleged in his fourth amended petition that the School District alters the normal flow of traffic in its parking lot during school dismissal, and Tamez "was supposed to be controlling traffic but was in his vehicle keeping cool." Enrique also alleged that Tamez purposefully filed a false police report by attributing the accident to Enrique, which caused Enrique's auto insurance premiums to increase. Enrique implied that Tamez lied on the report out of "resentment" because Enrique insisted that the officer file a report rather than letting the drivers handle it themselves through their respective insurance carriers, as Tamez had requested.

The School District filed a plea to the jurisdiction arguing that Enrique failed to allege a valid waiver of governmental immunity under the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The School District noted that Enrique identified Tamez as a School District employee but never alleged the same about Gomez. The School District affirmatively denied that Gomez was its employee and attached a copy of the crash report, which indicated: (1) Gomez was seventeen years old at the time of the accident; and (2) he was operating a vehicle owned by Rodolfo Gomez. Enrique filed multiple responses but never alleged or provided evidence demonstrating that Gomez was a School District employee. Instead, he argued that his claim sounded in premises liability, and thus, the School District's liability was waived under § 101.021(2) of the TTCA. He also identified §§ 101.0215(25), 101.055(3), 101.056(2), and 101.060(1) as waivers of the School District's immunity under the facts of the case. During a hearing on the matter, Enrique conceded that Gomez was not a School District employee. The

case and is not a party to this appeal.

3

trial court granted the School District's plea and dismissed it from the suit.

After the case was transferred to another trial court,[2] Victoria joined the suit as a pro se plaintiff and alleged that she suffered personal injuries as a result of the accident. The Guillens then filed a motion to rejoin the School District as a defendant, reiterating the same arguments Enrique previously made to the prior trial court. The new trial court reaffirmed the dismissal and denied the motion to rejoin the School District.

Finally, Gomez filed a combined no-evidence and traditional motion for summary judgment. The live petition when the trial court heard the motion was "Plaintiffs' Second Amended Petition to New Court," which was actually the ninth amended petition filed in the case. In it, the Guillens alleged that Gomez "deliberately and with malice used his motor vehicle as a weapon against [them]." They also alleged that after the initial impact, Gomez "continued to ram his vehicle into [their] vehicle[,] trying to push it towards the parked car area." They identified their theories of liability as "intentional" assault and "bullying." They further claimed that Victoria was diagnosed with agoraphobia after the incident, and Enrique had suffered $21,464 in out-of-pocket medical expenses for her mental health treatment, as well as $869.83 in property damage to his vehicle.

Gomez's motion for summary judgment challenged each element of the assault claim. In support of his traditional motion for summary judgment, Gomez produced Tamez's crash report, still images taken from the security footage, and records from Victoria's medical providers. Gomez argued that this evidence conclusively established that Enrique caused the accident and that Victoria could not prove that her alleged injuries

---

[2] The original trial judge recused himself after Enrique filed a motion accusing him of being biased for granting a motion to compel Enrique to produce evidence.

4

were proximately caused by the incident. The Guillens filed their "Objection to Summary Judgment Motion" and attached numerous unauthenticated documents as supporting evidence. After conducting a hearing, the trial court signed an order granting summary judgment in favor of Gomez without specifying the grounds. This appeal ensued.

## II.    GOVERNMENTAL IMMUNITY

By their first issue, the Guillens complain that the School District was improperly dismissed from the case.

## A.    Applicable Law & Standard of Review

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction over a plaintiff's claim is generally a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

Sovereign immunity is a common-law doctrine that protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity provides similar protection to the political subdivisions of the State, including school districts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011).

The TTCA waives immunity for certain tort claims against governmental entities, including property damage and personal injury proximately caused by a government employee who negligently operates or uses a motor vehicle while acting within the scope

5

of their employment. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). The TTCA also waives immunity for "personal injury or death so caused by the condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). School districts, however, are excluded from the TTCA's waiver of immunity "[e]xcept as to motor vehicles." *Id.* § 101.051. In other words, the TTCA "provides a more limited waiver of immunity for school districts." *El Paso Indep. Sch. Dist. v. De La Rosa*, 656 S.W.3d 586, 588 (Tex. App.—El Paso 2022, no pet.).

It is the plaintiff's initial burden to plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction, and we review this question as a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally and look to the plaintiff's intent. *Id.* If the pleadings are deficient but do not demonstrate an incurable defect, then the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend their pleadings. *Id.* at 226–27. Conversely, if it becomes clear that the plaintiff cannot allege facts sufficient to demonstrate a viable waiver of immunity, then the suit should simply be dismissed. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

A governmental defendant may challenge the existence of jurisdictional facts and support its argument with evidence. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). In such instances, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)).

6

When a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the jurisdictional question as a matter of law. *Miranda*, 133 S.W.3d at 228. "[I]n evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022) (citing *Miranda*, 133 S.W.3d at 228).

## B.     Analysis

It is undisputed that Gomez was not a School District employee. Consequently, the only potentially viable theory of tort liability against the School District—one based on the negligent operation or use of a motor vehicle by a district employee—cannot be established through Gomez's conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(1), 101.051; *Tarkington Indep. Sch. Dist. v. Aiken*, 67 S.W.3d 319, 325 (Tex. App.—Beaumont 2002, no pet.) (finding school district immune because "there is no evidence in the record that a school district employee was operating or using the vehicle and no evidence that the school district owned the vehicle"); *Heyer v. N. E. Indep. Sch. Dist.*, 730 S.W.2d 130, 132 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (affirming summary judgment for a school district on the question of immunity because "[t]he facts before [the court] do not indicate that a school district vehicle was at all involved in the accident, that a school employee was operating any vehicle connected with the accident, or that there was any causal connection between the injuries and the operation or use of any vehicle owned by the district or operated by an agent of the district"). Additionally,

7

even if Gomez had been a district employee, the Guillens have consistently maintained in their pleadings that Gomez "purposefully caused" the accident, and the TTCA does not waive immunity for intentional torts committed by government employees. *See id.* § 101.057(1) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort . . . .").

With respect to Tamez's alleged failure to manage the flow of traffic in the parking lot, "allegations of negligence against the School District related to the control and supervision of the parking lot, students, and the traffic . . . do not amount to acts or omissions arising from the operation or use of a motor vehicle contemplated by the [TTCA]." *Heyer*, 730 S.W.2d at 132; *see Luna v. Harlingen Consol. Indep. Sch. Dist.*, 821 S.W.2d 442, 444–45 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied) (finding school district immune from allegations that poor planning and layout of a bus stop proximately caused injuries to children who were struck by a motorist while waiting for the bus); *Jackson v. City of Corpus Christi*, 484 S.W.2d 806, 810 (Tex. App.—Corpus Christi–Edinburg 1972, writ ref'd n.r.e.) (op. on reh'g) (holding that allegations involving "negligence in the control of traffic" did not constitute operation or use of a motor vehicle under the TTCA). Likewise, any argument that the School District's decision to alter the flow of traffic created a premises defect is fatally defective because the School District is immune from premises liability claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.051; *Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 461 (Tex. App.—Fort Worth 2002, no pet.) (explaining that "the only exception to a school district's sovereign immunity is when the claimed injury arises from the operation or use of a motor vehicle"); *De La Rosa*, 656

8

S.W.3d at 588 (finding school district immune from premises defect claim because the "pleadings do not allege that the personal injury was caused by the use or operation of [a] motor vehicle"). Finally, for the same reasons discussed above, Enrique's allegation that Tamez intentionally filed a false police report against him is not actionable against the School District.[3] *See id.* §§ 101.051, 101.057(1).

In sum, the School District's immunity is broader under the TTCA than other governmental entities, and the Guillens have failed to demonstrate that their claims fall within the School District's narrow waiver of immunity. Accordingly, the trial court did not err by granting the School District's plea to the jurisdiction or by denying the Guillens' motion to rejoin the School District. The Guillens' first issue is overruled.

## III. DISCOVERY COMPLAINTS

The Guillens allege that "[t]he trial courts conspired with numerous public servants to deny . . . [them] . . . their civil right to due process." This alleged conspiracy included a court reporter and a deputy district clerk. According to the Guillens, both trial courts "abated all request[s] for production and [s]ubpoenas," and this frustrated their attempts to conduct discovery and obtain the evidence necessary to support their claims. They complain about their attempts to obtain the following evidence: (1) a copy of the surveillance video from the School District, an effort that began prior to litigation and continued during the discovery process; and (2) photographs of the front of Enrique's vehicle that he allegedly submitted to Allstate as part of the claims process. The Guillens

---

[3] We note that the result would have been the same if Enrique had sued Tamez instead of the School District on this claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Rivera v. Garcia*, 589 S.W.3d 242, 249 (Tex. App.—San Antonio 2019, no pet.) (dismissing suit against deputies who allegedly filed a false report while acting within the scope of their employment).

9

believed that this evidence would prove that Gomez caused the accident and that Tamez lied on the crash report.

Gomez responds that both trial courts correctly applied the rules of procedure but the Guillens simply "failed to understand the proper method for obtaining the documents and other items that they were interested in." In any event, Gomez points out that the Guillens were provided with a copy of the surveillance video and all photographs in Allstate's possession prior to Gomez filing his motion for summary judgment.

While a party has the right to represent themselves in court, they are held to the same standard as licensed attorneys when doing so. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). This includes complying with the rules of procedure. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam). Holding pro se litigants to a lesser standard would give them an unfair advantage over litigants represented by counsel. *Mansfield State Bank*, 573 S.W.2d at 185.

The Guillens point to two hearings to support their claim: a status hearing conducted by the first trial court on March 12, 2020, and a motion-to-quash hearing conducted by the second trial court on August 2, 2022. During the first hearing, Enrique complained that he had not received all photographs he submitted to Allstate while using its application to document the damage to his vehicle. According to Enrique, he was required to submit a 360-degree view of his vehicle, but the photographs provided by Gomez's counsel did not include the front view of his vehicle. Gomez's counsel represented to the trial court that he had already produced all photographs in Allstate's possession and brought a second set of copies and tendered them to Enrique in open

10

court. The trial court took counsel at his word and explained to Enrique that he could not compel Gomez to produce something that did not exist. The court also reminded Gomez's counsel of his ongoing obligation to produce responsive discovery if the complained-of photos should surface.

During the same hearing, Enrique also complained about his inability to obtain a copy of the surveillance video from the School District, which was no longer a party to the case. The School District had previously resisted production of the security footage, arguing it was protected by the Family Education Rights to Privacy Act because "student images are shown on the video." The trial court suggested to Gomez's counsel that his client may also be interested in the video, and that if counsel were to obtain a copy through discovery, he should provide a copy to Enrique. It is undisputed that Gomez's counsel later subpoenaed the security footage from the School District and provided a copy to Enrique.

However, Enrique believed that the video was incomplete and served the School District with a subpoena to produce additional security footage. The School District filed a motion to quash the subpoena for failure to state a time and place to produce the video for inspection. *See* TEX. R. CIV. P. 176.1(e), 176.2(b). The second trial court heard the matter, agreed that the subpoena was facially defective, and granted the motion. Enrique then asked the trial court, "What can I do?" The trial court responded (correctly) that it could not give him legal advice but noted that he should be able to correct the deficiencies in the subpoena if he was paying attention during the hearing. *See Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003) (observing that "[i]n the Texas adversarial

11

system, the judge is a neutral arbiter between the advocates"); *see also W.D. v. R.D.*, No. 02-18-00328-CV, 2019 WL 2635563, at *6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (explaining that a trial court should not "instruct the pro se litigant how to navigate the evidentiary rules" because doing so "would impermissibly transform a trial court from a neutral arbiter into an advocate for the pro se litigant"). The Guillens have not pointed to anything in the record indicating that they attempted to correct the deficiencies and properly subpoena the School District.

Having reviewed the record before us, we find nothing to support the Guillens' accusation that both trial courts "abated all request[s] for production and [s]ubpoenas" and failed to "enforce" the Texas Rules of Civil Procedure. To the contrary, the record reflects that the parties exchanged discovery and that both trial courts faithfully applied the rules of procedure while holding the Guillens to the same standard of exactness as licensed attorneys. *See Wheeler*, 157 S.W.3d at 444; *Mansfield State Bank*, 573 S.W.2d at 185. The Guillens' second issue is overruled.

## IV. SUMMARY JUDGMENT

By their final issue, the Guillens complain that summary judgment was improperly granted because they raised a material issue of fact on each challenged element of their claims.

### A. Standard of Review & Applicable Law

We review summary judgments de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor.

*Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). A summary judgment motion may be brought on traditional or no-evidence grounds. *See* TEX. R. CIV. P.166a.

If a party moves for summary judgment on both no-evidence and traditional grounds, as Gomez did here, we first consider the no-evidence motion. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). "If the non-movant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Id.*

A party may move for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "A no-evidence motion for summary judgment immediately shifts the burden to the nonmovant." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022). "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). "Material facts are those facts which affect the outcome of the suit under the governing law." *Smith v. Mosbacker*, 94 S.W.3d 292, 294 (Tex. App.— Corpus Christi–Edinburg 2002, no pet.) (cleaned up).

"The elements for civil assault mirror those required for criminal assault." *Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex. App.—Dallas 2007, no pet.) (citing *Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). There are two types of assault that involve contact: infliction of bodily injury and offensive physical contact. *See* TEX. PEN. CODE ANN. § 22.01(a). Because Victoria's

13

alleged injuries are mental rather than physical, we assume her claim is the latter kind. *See Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967) ("Damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body."). Thus, as relevant here, a person commits an assault if he intentionally causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See* TEX. PEN. CODE ANN. § 22.01(a)(3) (including "knowing" as a lesser culpable mental state, which was not alleged by the Guillens). A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the defendant. *Adams v. State*, 180 S.W.3d 386, 414 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.) (citing *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)). Finally, a plaintiff may prove assault through indirect contact, such as crashing one vehicle into another. *Young v. City of Dimmitt*, 776 S.W.2d 671, 672–73 (Tex. App.—Amarillo 1989, writ denied).

## B.    The Summary Judgment Record

Before turning to the summary judgment record, we note what is missing from the record. Throughout the long and winding road of this litigation,[4] much ink was spilled over the production of the security video and what it allegedly proves. Yet, remarkably, the

---

[4] The District Clerk's "Case Summary" is twenty-one pages long.

video is not part of the summary judgment record. Although the motion for summary judgment includes several still images from the video, Gomez apparently failed to file a copy of the video with the district clerk. Instead, according to Gomez's brief, "the video was provided to the trial court" during the summary judgment hearing and the video "speaks for itself." Of course, summary-judgment practice generally requires the moving party to file and serve supporting evidence "at least twenty-one days before the time specified for hearing." *See* TEX. R. CIV. P. 166a(c) (providing an exception upon "leave of court, with notice to opposing counsel"); *Save Our Springs All., Inc. v. Austin Indep. Sch. Dist.*, 973 S.W.2d 378, 381 (Tex. App.—Austin 1998, no pet.) ("The trial court did not err in refusing to admit evidence tendered at the summary-judgment hearing."). Further, it is not clear whether the video was moved into evidence because neither party requested the court reporter to prepare a transcript of the hearing, including any exhibits that may have been admitted. *See* TEX. R. APP. P. 34.6(b)(1), (c)(2). Perhaps the parties did not request a transcript because none exists. *See FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022) ("Because issues, grounds, and testimony in support of and in opposition to summary judgment may not be presented orally, a reporter's record of such a hearing is generally unnecessary for appellate purposes."). Whatever the reason, the video is not before us.

The absence of a transcript is also puzzling because Gomez claims in his brief that the trial court granted his "oral motion to strike" Guillens' evidence *in toto*, a ruling that is not reflected in the order granting summary judgment. *Id.* at 830–31 (holding that "a trial court's on-the-record, oral ruling sustaining an objection to summary judgment evidence

15

suffices to strike the evidence from the summary judgment record when the ruling is not reduced to a written order"). This alleged "oral" motion to strike does not comport with summary-judgment practice. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (holding that "both the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing"). Nevertheless, if this ruling did occur, it has not been challenged by the Guillens on appeal, a potential waiver that would have set our analysis on a different path. *See Bolanos v. Purple Goat, LLC*, 649 S.W.3d 753, 763 (Tex. App.—El Paso 2022, no pet.) ("Because Bolanos fails to address the evidentiary challenges to the excluded evidence, she is effectively left with nothing in the record to respond to the no-evidence motion for summary judgment. Given that record, we are compelled to affirm the order granting of the Rule 166a(i) motion."). However, we can only base our opinion on the record before us—one that does not include a video of the incident or any ruling excluding the Guillens' summary judgment evidence.

## C.    Analysis

Nevertheless, we agree with Gomez that there is no competent summary judgment evidence in the record that raises a genuine issue of material fact as to whether he committed an intentional tort of any kind. *See Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Formal defects may be waived by failure to object, and if waived, the evidence is considered. Substantive defects are never waived because the evidence is incompetent and cannot be considered under any circumstances."). It is undisputed that the School District altered the flow of traffic in the

16

parking lot during dismissal so that both lanes of traffic were traveling in the same direction. In an attempt to prove how the accident occurred, the Guillens first submitted this illustrative diagram, which shows the two vehicles driving side-by-side in the parking lot before Gomez's vehicle attempts to merge into the Guillens' lane of traffic near the parking lot exit:



The diagram was not attached to an affidavit or any other testimony that provides context or further detail about how the incident occurred. *See* TEX. R. CIV. P. 166a(c); *see also Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022) (per curiam) ("As a general proposition, pleadings are not competent summary-judgment evidence, even if they are sworn or verified." (citing *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818 (Tex. 2021))). It is also unclear who created the diagram. Assuming that it was created by Victoria or Enrique, this visual aid is effectively a completely unauthenticated statement of what allegedly occurred, and such statements are not competent summary judgment evidence. *See Trimble v. Fed. Nat'l Mortgage*

*Ass'n*, 516 S.W.3d 24, 32 n.3 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("A completely unauthenticated document constitutes no evidence for purposes of a motion for summary judgment or opposition to such a motion."); *Moron v. Heredia*, 133 S.W.3d 668, 671 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) ("The only document produced by appellants in response to appellee's motion for summary judgment was McAllister's report. This document was neither verified nor accompanied by an affidavit. As such, it did not constitute admissible evidence."); *Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.) (holding a complete absence of authentication is a defect of substance that is not waived by a party's failure to object and may be urged for the first time on appeal, and distinguishing a complete absence of authentication from a situation in which a party attempts to authenticate but does so improperly, which is a defect of form); *see also Bayou City Fish Co. v. S. Tex. Shrimp Processors, Inc.*, No. 13–06–00438–CV, 2007 WL 4112003, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2007, no pet.) (mem. op.) ("If, therefore, a statement is unauthenticated, unsworn, and unaccompanied by an affidavit, it is not competent summary judgment evidence.").

Even if the failure to authenticate was a formal rather than substantive defect, the diagram is still not competent evidence of intentional assault because it raises two equally plausible inferences: (1) Gomez was aware that the Guillens were next to him when he merged into their lane, suggesting the contact may have been intentional; or (2) Gomez, for any number of reasons, failed to maintain a proper lookout, and the contact was merely inadvertent. *See Arcides v. Rojas*, 677 S.W.3d 154, 161 (Tex. App.—El Paso 2023, no

18

pet.) ("The duty to maintain a proper lookout while driving encompasses the duty to observe, in a careful and intelligent manner, traffic and the general circumstances in the vicinity." (citing *Carney v. Roberts Inv. Co.*, 837 S.W.2d 206, 210 (Tex. App.—Tyler 1992, writ denied))). "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 642 (Tex. 2023) (cleaned up) (quoting *City of Keller*, 168 S.W.3d 802, 813 (Tex. 2005)). Stated differently, even if considered, this diagram alone is no evidence that Gomez "deliberately" caused the collision. *See id.*

The Guillens also allege in their live pleading that, after the initial contact, Gomez "continued to ram his vehicle into [their] vehicle[,] trying to push it towards the parked car area." The above diagram does not support this allegation and is thus insufficient to raise a genuine issue of material fact about any subsequent assault allegedly committed by Gomez.

The only other evidence the Guillens submitted to demonstrate how the incident occurred was unauthenticated still images taken from the video. Normally, "we ignore evidence attached to a combined summary-judgment motion and offered in support of traditional-summary-judgment grounds, unless the non-movant directed the trial court to that evidence in the response to the movant's no-evidence motion." *Stettner v. Lewis & Maese Auction, LLC*, 611 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.). In this case, because both parties submitted still images from the same video, we will consider the Guillens' reliance on the unauthenticated images attached to their response as an invitation for the trial court to also consider the School District's

19

authenticated images from the same video. *See id.* Moreover, we find it unnecessary to determine whether the Guillens' unauthenticated images were admissible under these circumstances because both sets of images depict the same sequence of events.

The first few images establish the following facts: two lanes of traffic were driving in the same direction through the parking lot before merging into a single lane to exit; Enrique, who was traveling in the right lane, passed a stopped vehicle on the righthand side and merged back into the right lane; vehicles in the right lane were merging into the left lane to exit; Gomez was driving in the left lane; and the two vehicles drove side-by-side for a short distance, as depicted in this image:[5]



The final image, depicted below, shows the two vehicles side-by-side after they made contact, and Gomez's car, which is slightly in front of Enrique's truck, remains in the

_____

[5] We have elected to use the images provided by the School District because they are of a superior quality. The School District provided the labels and markers identifying the vehicles.

established lane of traffic:



Therefore, the images do not support the Guillens' theory of liability. Rather, the images are consistent with Tamez's report faulting Enrique for the collision. We conclude that the Guillens failed to raise a genuine issue of material fact as to whether Gomez committed any type of intentional tort against them. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220. Accordingly, their third issue is overruled.

## V.  CONCLUSION

We affirm the trial court's judgment.

JENNY CRON
Justice

Delivered and filed on the
17th day of April, 2025.